UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TOMMY MCCLELAND,<br>Plaintiff,<br>v.<br>NANCY BERRYHILL,<br>Defendant. | Case No.18-cv-00474-JSC<br><br>**ORDER RE CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br>Re: Dkt. Nos. 21, 26 |

Plaintiff Tommy McCleland seeks social security benefits for a combination of mental and physical impairments, including: depression, anxiety, and hip, knee, and back pain. (Administrative Record ("AR") 229.) Pursuant to 42 U.S.C. § 405(g), Plaintiff filed this lawsuit for judicial review of the final decision by the Commissioner of Social Security ("Commissioner") denying his benefits claim. Now before the Court are Plaintiff's and Defendant's Motions for Summary Judgment.[1] (Dkt. Nos. 21 & 26.) Because the Administrative Law Judge's ("ALJ") Step Two determination regarding the severity of Plaintiff's depression and anxiety was not supported by substantial evidence, the Court GRANTS Plaintiff's motion, DENIES Defendant's cross-motion, and REMANDS for further proceedings.

**LEGAL STANDARD**

A claimant is considered "disabled" under the Social Security Act if he meets two requirements. *See* 42 U.S.C. § 423(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). First, the claimant must demonstrate "an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in

---

[1] Both parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 4, 9.)

death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Second, the impairment or impairments must be severe enough that he is unable to do her previous work and cannot, based on his age, education, and work experience "engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is disabled, an ALJ is required to employ a five-step sequential analysis, examining: "(1) whether the claimant is 'doing substantial gainful activity'; (2) whether the claimant has a 'severe medically determinable physical or mental impairment' or combination of impairments that has lasted for more than 12 months; (3) whether the impairment 'meets or equals' one of the listings in the regulations; (4) whether, given the claimant's 'residual functional capacity,' the claimant can still do his or her 'past relevant work'; and (5) whether the claimant 'can make an adjustment to other work.'" *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012) (quoting 20 C.F.R. §§ 404.1520(a), 416.920(a)).

An ALJ's "decision to deny benefits will only be disturbed if it is not supported by substantial evidence or it is based on legal error." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (internal quotation marks and citation omitted). As explained by the Ninth Circuit, "[s]ubstantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (internal quotation marks and citation omitted). "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Id*. In other words, if the record "can reasonably support either affirming or reversing, the reviewing court may not substitute its judgment for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 523 (9th Cir. 2014) (internal quotation marks and citation omitted). However, "a decision supported by substantial evidence will still be set aside if the ALJ did not apply proper legal standards." *Id*.

**PROCEDURAL HISTORY**

Plaintiff filed an application for Disability Insurance Benefits under Title II of the Social Security Act (the "Act") on December 4, 2013 and an application for supplemental security income under Title XVI on February 28, 2014. (AR 228-250.) In both applications, Plaintiff

alleged disability beginning on December 31, 2000. (*Id.*) His applications were denied both initially and upon reconsideration. (AR 22.) Plaintiff then submitted a written request for a hearing before an ALJ and the hearing was held on January 3, 2017. (*Id.*) On March 9, 2017, the ALJ issued a decision finding Plaintiff not disabled. (AR 22-34.) Plaintiff filed a request for review of the ALJ's decision which was denied on March 21, 2017 making the ALJ's decision the Commissioner's final decision. (AR 1-3, 224.) Plaintiff commenced this action for judicial review of the Commissioner's decision on January 22, 2018, pursuant to 42 U.S.C. § 405(g).

## ADMINISTRATIVE RECORD

The ALJ found Plaintiff not disabled under Sections 216(i) and 223(d) of the Social Security Act, taking into consideration the testimony and other evidence, and using the SSA's five-step sequential evaluation process for determining disability. (AR 22-34.); *see* 20 C.F.R. §§ 404.1520(a), 416.920(a).

At Step One, the ALJ found that Plaintiff engaged in substantial gainful activity from January 2001 though June 2001, but that since that period he has not engaged in substantial gainful activity. (AR 24-25.)

At Step Two, the ALJ determined that for purposes of Plaintiff's application for Title II disability benefits, he did not have a severe medically determinable impairment from the alleged onset date of December 2000 through December 2006. (AR 24-27.) However, for purposes of his application for supplemental security income under Title XVI the ALJ found that as of January 1, 2007, Plaintiff had the following severe impairments: knee, hip, and back pain of uncertain etiology and substance abuse. (AR 27.) The ALJ found insufficient evidence that Plaintiff's "affective and anxiety-related disorders caused more that 'mild' limitation in any of the functional areas and are nonsevere." (AR 29.) In doing so, the ALJ gave little weight to the opinion of examining psychologist Dr. Wiebe that Plaintiff had "major depressive disorder (recurrent, severe), generalized anxiety disorder, other personality disorder (with avoidant personality traits, dependent personality trains, melancholic personality features and masochistic personality features, rule[d] out unspecified neurocognitive disorder, rule[d] out cannabis use disorder and methamphetamine use disorder in early sustained remission." (AR 28.) The ALJ found

3

insufficient evidence of any severe mental impairment other than substance abuse." (AR 29.) The ALJ also rejected the opinions of the State Agency medical consultants that Plaintiff had severe affective disorder and that his substance abuse was not severe. (*Id*.)

At Step Three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). (AR 20.) In doing so, the ALJ found that none of Plaintiff's physical impairments were sufficient to meet listings 1.02 and 1.04. (AR 30.) The ALJ did not consider listing 12.09 regarding substance abuse because it is no longer listed as an impairment. (AR 30.)

The ALJ next considered Plaintiff's residual functional capacity ("RFC") and concluded that Plaintiff retained the RFC to perform light work except that he can lift, carry, and push/pull 20 pounds occasionally, and 10 pounds frequently, sit 6 hours in an 8-hour workday, stand 6 hours in an 8-hour workday and walk 6 hours in an 8-hour workday. (AR 30.) The ALJ also found that Plaintiff cannot tolerate exposure to load noise and can occasionally respond appropriately to the public. (*Id*.)

The ALJ found that Plaintiff's "medically determinable impairment could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (AR 31.) The ALJ found that although Plaintiff alleged debilitating knee, hip, and back pain, the pain complaints in the record were sporadic. (AR 31.) The ALJ stated that he had included a "limitation to occasional public interaction based on [Plaintiff's] ongoing substance abuse," but did not address any limitations based on mental impairments. (AR 32.)

At Step Four, the ALJ found that Plaintiff was unable to perform his past relevant work as a van driver based on the vocational expert's testimony. (AR 33.)

At Step Five, the ALJ concluded that Plaintiff was not disabled because he could perform other work in significant numbers in the national economy, citing assembler, cleaner, and packing line worker as representative unskilled light occupations that Plaintiff could perform. (AR 33-34.)

4

1   The ALJ based this determination on the testimony of the vocational expert and Plaintiff's residual
2   functional capacity, age, education, and work experience in conjunction with the Medical-
3   Vocational Guidelines. (*Id.*)

**DISCUSSION**

Plaintiff raises three primary issues with respect to the ALJ's determination. First, that the ALJ erred at Step Two of the sequential evaluation in finding that Plaintiff's anxiety and depression were not severe. Second, that the ALJ erred in failing to conduct the proper analysis under SSR 13-2p to determine if Plaintiff's substance abuse was material to the disability determination. Third, that the ALJ erred with respect to the RFC finding which did not include any limitations based on Plaintiff's anxiety or depression.

**A. The ALJ's Step Two Finding Regarding Plaintiff's Depression and Anxiety**

The ALJ found insufficient evidence that claimant's affective and anxiety-related disorders caused more than "'mild' limitation in any of the functional areas and [we]re non-severe." (AR 29.) Plaintiff contends that the ALJ's finding was not supported by substantial evidence because (1) the ALJ erred in giving little weight to examining psychologist Dr. Wiebe's opinion; (2) the medical evidence as a whole demonstrates Plaintiff's long history of depression and anxiety; and (3) the ALJ improperly relied on Plaintiff's activities of daily living to find that his depression and anxiety were non-severe.

### 1. The ALJ's Rejection of Dr. Wiebe's Opinion

#### a) Legal Standard for Weighing Medical Evidence

In the Ninth Circuit, courts must "distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (as amended (Apr. 9, 1996) ). A treating physician's opinion is entitled to more weight than that of an examining physician, and an examining physician's opinion is entitled to more weight than that of a nonexamining physician. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). "The opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and

5

legitimate reasons that are supported by substantial evidence in the record," and the ALJ "must provide "clear and convincing" reasons for rejecting an uncontradicted opinion of an examining physician. *Lester*, 81 F.3d at 830-31.

"When an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, he errs. In other words, an ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Garrison v. Colvin*, 759 F.3d 995, 1012-13 (9th Cir. 2014) (internal citation omitted). In weighing medical opinions, the ALJ may consider (1) the examining relationship, (2) the treatment relationship, (3) the supportability, (4) the consistency, (5) the specialization, and (6) other factors brought to the ALJ's attention. 20 C.F.R. § 416.927(c)(5). In conducting this review the court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017).

### b) The ALJ Erred in Assigning Dr. Wiebe's Opinion Little Weight

The ALJ accorded little weight to Dr. Wiebe's opinion because: (1) it was not consistent with the mental health treatment records, which showed improvement with medication; (2) did not address Dr. Villa's opinion that Plaintiff's symptoms were substance induced; and (3) did not address the GAF scores which "remained in the mild to moderate range even with ongoing substance abuse." (AR 29.) The ALJ erred.

First, the only evidence the ALJ cites to support the finding that Plaintiff's mental condition improved when Plaintiff was compliant with his medication, and therefore that the mental health treatment records were inconsistent with Dr. Wiebe's opinion, is Exhibits 3F-4F and 7F/2.[2] (AR 28.) While the 69 pages of medical records in Exhibits 3F-4F support that between

---

[2] The Commissioner's post hoc review of the medical evidence and citation to portions of the record which suggest improvement with medication is unavailing. *See Bray v. Commissioner of Social Security Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual

6

February 2010 and April 2013 Plaintiff reported feeling some improvement with medication, those same records—often in the successive sentence—describe Plaintiff as "continuing to have a "depressed mood, difficulty falling asleep, difficulty staying asleep and diminished interest or pleasure" (AR 447 (3/20/14 treatment note)); "still has significant impairment with fatigue, poor concentration and anhedonia" (AR 469 (3/13/13 treatment note)); and "mood more stable…[but] at the same time much need for improvement" (AR 470 (9/12/12 treatment notes)). Indeed, while Plaintiff reported feeling better about a month after he started taking Wellbutrin, two months later he reported that although he was continuing to take Wellbutrin his "anxiety levels were high." (*Compare* AR 436 (7/9/10 treatment notes) *with* AR 431 (9/10/10 treatment notes).) Nor does Exhibit 7F at 2 support the ALJ's conclusion regarding Plaintiff's improvement. That particular page states that Plaintiff "admits to poor compliance with meds…made to understand the need to take meds regularly…in order to achieve therapeutic levels…" (AR 480.) This is not the same as the record demonstrating that Plaintiff's mental health conditions *actually improved* when he took his medication.

Further, the medical evidence that the ALJ elsewhere discusses in his opinion consistently reflects diagnoses of "major depressive disorder (recurrent, moderate)" (AR 28 citing James Sondecker's June 2011 evaluation at Exhibit 3F (AR 415-416)); "depressed mood, poor insight/judgment, limited thought processes and ruminations" diagnosing "unspecified drug-induced mental disorder, cannabis dependence, and amphetamine abuse" (AR 28 citing Dr. Villa's April 2014 evaluation at Exhibit 7F (AR 492)); and "major depressive disorder (recurrent severe), generalized anxiety disorder, other personality disorder" (AR 28 citing Dr. Wiebe's December 2016 evaluation at Exhibit 11F (AR 980)). The only other record cited is Plaintiff's August 2015 visit with Social Worker James Sondecker where Plaintiff sought monthly therapy, but Mr. Sondecker was reluctant to provide such therapy because there was "questionable motivation for the change." (AR 28 citing Exhibit 10F at AR 910-911.) The ALJ does not mention that Mr.

---

findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking."). "We are constrained to review the reasons the ALJ asserts." *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003).

Sondecker assessed Plaintiff as having "chronic depression." (AR 911.) The ALJ thus erred in failing to cite specific and legitimate reasons for his opinion that the mental health treatment records were inconsistent with Dr. Wiebe's opinion regarding the severity of Plaintiff's depression and anxiety.

Second, the ALJ likewise erred in rejecting Dr. Wiebe's opinion because "she did not address the treating psychologist's opinion that the symptoms were substance-induced." (AR 29.) In fact, Dr. Wiebe acknowledged Plaintiff's substance abuse history throughout her 17-page opinion. (AR 983, 992.) Indeed, she concluded that "[h]e self-medicates his anxiety using cannabis. His use of cannabis may also be associated with his long-term personality disorder problems." (AR 992.) It is thus not accurate for the ALJ to have concluded that Dr. Wiebe "did not specify the effect of daily marijuana use on the examination findings or psychometric testing." (AR 29.) That Dr. Wiebe failed to specifically cite to Dr. Villa's report is not itself a specific and legitimate reason for rejecting Dr. Wiebe's opinion given the volume of other evidence that Dr. Wiebe discussed and the numerous examination findings summarized. *See Holohan v. Massanari*, 246 F.3d 1195, 1207 (9th Cir. 2001) (concluding that the ALJ's basis for rejecting the treating physician's medical opinion was not supported by substantial evidence because the ALJ "selectively relied on some entries ... and ignored the many others that indicated continued, severe impairment"); *Williams v. Colvin*, No. ED CV 14-2146-PLA, 2015 WL 4507174, at *6 (C.D. Cal. July 23, 2015) ("An ALJ may not cherry-pick evidence to support the conclusion that a claimant is not disabled, but must consider the evidence as a whole in making a reasoned disability determination.").

Third, that Dr. Wiebe failed to reference Plaintiff's stable GAF scores is not a specific and legitimate reason to reject her opinion. "The Commissioner has determined the GAF scale 'does not have a direct correlation to the severity requirements in the Social Security Administration's mental disorders listings.'" *McFarland v. Astrue*, 288 Fed. App'x. 357 (9th Cir. 2008) (quoting Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed.Reg. 50,746, 50,765 (Aug. 21, 2000)); *see also Doney v. Astrue*, 485 F. App'x 163, 165 (9th Cir. 2012) (holding that in light of the Commissioner's determination as to the GAF scale, "it was

8

not error for the ALJ to disregard [the claimant's] GAF score").

***

Accordingly, the ALJ failed to provide specific and legitimate reasons supported by substantial evidence in the record for giving little weight to Dr. Wiebe's opinion.

### 2. The Medical Record as a Whole

As noted above, the medical record contains voluminous evidence that Plaintiff suffered from depression and anxiety. The ALJ's finding to contrary is based on (1) the ALJ's reliance on Dr. Villa's April 2014 opinion and (2) the ALJ's conclusion that "the [Plaintiff's] conditions improved with medication when he was compliant." (AR 28.) However, as explained *supra*, Dr. Villa's opinion standing alone is not a specific and legitimate reason to reject Dr. Wiebe's opinion nor does substantial evidence support the ALJ's conclusion that Plaintiff's condition improved when he was compliant with his medication.

Further, even if the medical record shows some periodic improvement "[c]ycles of improvement and debilitating symptoms are a common occurrence [with mental health issues], and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) (citing *Holohan*, 246 F.3d at 1205; *Holohan*, 246 F.3d at 1205 ("[The psychiatrist] statements must be read in context of the overall diagnostic picture he draws. That a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace."); *Ghanim v. Colvin*, 763 F.3d 1154, 1161-62 (9th Cir. 2014) (ALJ erred in rejecting the opinions of treating physicians based on treatment notes showing "some improved mood and energy level;" the treatment notes must read in the "'context of the overall diagnostic picture'" and "consistently reflect[ed] that [the plaintiff] continued to experience severe symptoms, including ongoing depression and auditory hallucinations, difficulty sleeping, nightmares, and memory loss") (quoting *Holohan*, 246 F.3d at 1205); *Scott v. Astrue*, 647 F.3d 734, 739-40 (7th Cir. 2011) (citations omitted) ("There can be a great distance between a patient who responds to treatment and one who is able to enter the

9

workforce, and that difference is borne out in [the] treatment notes. Those notes show that although [plaintiff] had improved with treatment, she nevertheless continued to frequently experience bouts of crying and feelings of paranoia. The ALJ was not permitted to 'cherry-pick' from those mixed results to support a denial of benefits.").

Accordingly, the ALJ's conclusion that the medical record as a whole does not support Plaintiff's severe depression and anxiety is not supported by substantial evidence.

### 3. The ALJ's Reliance on Plaintiff's Activities of Daily Living

Finally, the ALJ relied on Plaintiff's activities of daily living as a basis for his "mild limitation" finding. (AR 29.) In particular, the ALJ cited to Plaintiff taking college courses in 2010, picking up his kids from school, shopping in stores, maintaining his own finances, caring for his own hygiene, and performing light house duties. (*Id.*) The Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be "utterly incapacitated" in order to be disabled." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). That Plaintiff picks up his kids, shops, bathes, and performs light house duties does not mean he does not suffer from severe depression and anxiety.[3] *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.1989) ("[M]any home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication.")

\*\*\*

Accordingly, the Court concludes that the ALJ's Step Two finding that Plaintiff's depression and anxiety resulted in only mild limitations in functional areas and were nonsevere was not supported by substantial evidence.

### B. The Materiality of Plaintiff's Substance Abuse

In his opposition to the Commissioner's summary judgment motion, Plaintiff challenged the ALJ's evaluation of his substance abuse. While this matter must be remanded regardless of

---

[3] Plaintiff reported that he dropped out of Chabot College after one year because he "just couldn't make it." (AR 982.)

10

any error in treatment of the substance abuse (as will be explained below), the Court will briefly address this issue so that any errors are not repeated upon remand.

When the claimant has drug or alcohol addiction (DAA), the ALJ must first determine whether the claimant is disabled "without separating out the impact of alcoholism or drug addiction. If the ALJ finds that the claimant is not disabled under the five-step inquiry, then the claimant is not entitled to benefits and there is no need to proceed with the analysis under 20 C.F.R. §§ 404.1535 or 416.935." *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001). If the claimant is disabled without separating the DAA impact, then the ALJ "should proceed under §§ 404.1535 or 416.935 to determine if the claimant would still be found disabled if he or she stopped using alcohol or drugs." *Id.* (citations omitted). Specifically, the ALJ must determine "which of the claimant's disabling limitations would remain if the claimant stopped using drugs or alcohol." *Parra v. Astrue*, 481 F.3d 742, 747 (9th Cir. 2007); 20 C.F.R. § 404.1535(b). "If the remaining limitations would still be disabling, then the claimant's drug addiction or alcoholism is not a contributing factor material to his disability. If the remaining limitations would not be disabling, then the claimant's substance abuse is material and benefits must be denied." *Parra*, 481 F.3d at 747. Through this process, the claimant has the burden of proving that he is disabled. Social Security Ruling ("SSR") 13-2P, 2013 WL 621536, at *4 (2013). The evidence used in the materiality analysis differs depending on whether the claimant's disabilities are physical or mental. *Id.* at *7. If mental, the ALJ "must have evidence in the case record that establishes that a claimant with a co-occurring mental disorder(s) would not be disabled in the absence of DAA. Unlike cases involving physical impairments, we do not permit adjudicators to rely exclusively on medical expertise and the nature of a claimant's mental disorder." *Id.* at *9.

Here, the ALJ does not appear to have to conducted the SSR 13-2p materiality analysis. Instead, the ALJ found that Plaintiff's mental impairments were attributable to Plaintiff's substance abuse rather than determining whether Plaintiff would have been disabled in the absence of any substance abuse. The ALJ erred in failing to first determine the severity of the Plaintiff's symptoms without filtering out which impairments are related to his drug use. *Bustamante*, 262 F.3d at 955 (reversed and remanded with instructions for the ALJ to proceed with step three (and

11

four and five, if necessary) of the disability inquiry without attempting to determine the impact of the DAA on the claimant's mental impairments).

\*\*\*

Given the Court's conclusion that the ALJ's Step Two determination regarding the severity of Plaintiff's depression and anxiety was not supported by substantial evidence, the Court declines to consider Plaintiff's additional argument regarding the RFC finding. The ALJ's errors were not harmless and thus the ALJ's decision must be reversed. *See Molina v. Astrue*, 674 F.3d 1104, 1122 (9th Cir. 2012) (an error is harmless if it is "inconsequential to the ultimate nondisability determination"). The Commissioner's suggestion that any Step Two error was harmless because the ALJ identified unskilled jobs at Step Five which would be compatible with any limitations necessary based on Plaintiff's depression and anxiety is unpersuasive. The ALJ's error with respect to the Step Two determination and his improper weighing of the medical evidence permeated the entire disability determination and necessitates remand.

## C. Remand

Plaintiff asks the Court to remand for immediate benefits under the credit-as-true rule. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004). However, a court may remand for an immediate award of benefits where "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020. Each part of this three-part standard must be satisfied for the court to remand for an award of benefits, id., and "[i]t is the 'unusual case' that meets this standard." *Williams v. Colvin*, No. 12–CV6179, 2014 WL 957025, at \*14 (N.D. Cal. Mar. 6, 2014) (quoting *Benecke*, 379 F.3d at 595); *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017) ("where [...] an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency") (citing *Treichler v. Comm'r*

12

*of Soc. Sec. Admin.*, 775 F.3d 1090, 1105 (9th Cir. 2014) ). It is only "rare circumstances that result in a direct award of benefits" and "only when the record clearly contradicted an ALJ's conclusory findings and no substantial evidence within the record supported the reasons provided by the ALJ for denial of benefits." *Leon*, 880 F.3d at 1047.

In this case, there are outstanding issues that must be resolved before a final determination can be made. In particular, the ALJ must further develop the record regarding Plaintiff's disability status without cannabis or other substance use. On remand, the ALJ shall reassess the medical opinion evidence as a whole, explain the weight afforded to each opinion, and provide legally adequate reasons for any portion of an opinion that the ALJ discounts or rejects, including a legally sufficient explanation for crediting one doctor's opinion over any of the others. The ALJ shall also make a determination regarding the materiality of plaintiff's substance use in accordance with SSR 13–2p. *See Bustamante*, 262 F.3d at 955; 20 C.F.R. §§ 404.1535, 416.935; SSR 13–2p. If necessary, the ALJ shall reassess Plaintiff's RFC and proceed with the remainder of the disability analysis.

## CONCLUSION

For the reasons stated above, the Court GRANTS Plaintiff's motion for summary judgment, DENIES Defendant's motion, and REMANDS for a new hearing consistent with Order.

This Order disposes of Docket Nos. 21 and 26.

**IT IS SO ORDERED.**

Dated: May 9, 2019

JACQUELINE SCOTT CORLEY
United States Magistrate Judge